IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## NORTHERN DISTRICT—SUNBURY 1868.(a)

## Vandike's Appeal.—Campbell's Appeal.

1. Cake took a mortgage on Snyder's interest in land, appearing by the record to be held *in common* with Bergstresser, without notice that it was *partnership* property. He afterwards took another mortgage on the land from Snyder and Bergstresser, for a partnership debt; and at the same time Snyder confessed to Cake a judgment on his individual property, as collateral security for the latter mortgage. The land was sold under both mortgages, but did not pay the debts. *Held*, that the collateral judgment was not extinguished by the sale.

2. The personal property of the partnership was sold on an execution on the judgment against Snyder and on executions against Bergstresser. *Held*, that the proceeds should be divided between the executions against Snyder and those against Bergstresser.

3. When partnership property is sold under separate executions against the partners individually, the proceeds represent the several interests of the partners and not that of the partnership.

January 30th 1868. Before Thompson, C. J., Read, Agnew and Sharswood, JJ. Strong, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Northumberland county :* to October Term 1867.

The questions in this case arose on the distribution of the proceeds of sale, by the sheriff, of the personal property of William S. Snyder and S. L. Bergstresser.

On the 2d day of October 1863, Joseph W. Cake conveyed to Snyder and Bergstresser, as joint tenants, three lots of ground in Sunbury for $700, the consideration having been paid by partnership funds, there being no notice that the land was

(a) Argued at Philadelphia.

(9)

[Vandike's Appeal.]

partnership property. They erected in partnership the "Augusta Hotel" on the ground. On the 2d of February Snyder gave a mortgage to Cake on the same property for $4000, and on the 11th of May following Snyder and Bergstresser gave a mortgage to Cake on the same property for $5000 for money loaned to them. Snyder, on the 13th of the same month, confessed a judgment to Cake for $5000, as collateral to the mortgage, Cake having declined to loan the money without this security. The character of this judgment did not appear on the record. Snyder testified that this was a partnership debt, and was used in payment for building the hotel. At the time the judgment was given, Bergstresser was absent in the army, but he had requested Snyder to borrow money for partnership purposes. Snyder had individual real and personal property estimated to be worth $4000 or $5000, and was the owner of this individual property at the hearing before the auditor.

The hotel was afterwards carried on in the name of Bergstresser & Snyder. Without a dissolution of their partnership, Snyder left the hotel; J. W. Bilman came into the business, and he and Bergstresser carried it on together. Bilman afterwards left, and Bergstresser purchased from him, for himself, some of the articles of furniture, in which Snyder had no interest. The precise time of these transactions did not appear. L. & H. K. Campbell recovered a judgment against Bilman and Bergstresser jointly on the 8th of January 1866 for $107.62, and George H. Vandike recovered against the same defendants two judgments, December 30th 1865, one for $418 and the other for $203.43. The hotel property was sold under the mortgages at the suit of Cake, and produced $2361.46 less than his debt.

Cake issued a fi. fa., No. 50 to January Term 1866, on a judgment which he held against Bergstresser alone, for a debt of $950. The sheriff returned to this writ, "Raised on the sale of defendant's personal property, levied December 23d 1865, and sold December 30th 1865, for $994.68. Paid to Joseph W. Cake, $951.26." The debt on this execution was thus paid in full.

Cake also issued a fi. fa., No. 34 to January Term 1866, on his collateral judgment of $5000 against Snyder. The sheriff received the writ December 4th 1865.

Campbells issued a fi. fa., No. 2 to March Term 1866, on their judgment, against Bilman & Bergstresser : the writ came into the sheriff's hands January 15th 1866. Vandike issued fi. fas. No. 13 and 14 to same term on his judgments against the same defendants. The sheriff received these writs January 22d 1866.

To Cake's fi. fa., No. 34 to January Term, the sheriff returned : "Raised on sale of defendant's personal property, levied on December 23d 1865, and sold December 30th 1865, $617.07. Paid

to Joseph W. Cake, $503.01.   Also raised on sale of defendant's personal property as levied on December 30th 1865, on this writ, and fi. fa. No. 50 to same term, and on fi. fas. No. 2, 13 and 14, as levied on the 22d of January 1866, and sold January 22d 1866, on this writ, and on fi. fa. No. 50 to the same term as this writ, and fi. fas. 2, 13 and 14 to March Term 1866, $463.50. Retained my costs and costs on fi. fas. 2, 13 and 14, amounting to $55.84.   Paid balance, amounting to $407.06, into court."

Similar returns were made to the writs of Campbell and Vandike.

The property sold under these writs was the partnership property of Snyder and Bergstresser, except a few articles belonging to Bergstresser alone.

Jeremiah Snyder, Esq., was appointed auditor to report distribution of the money in court ($407.06).

He reported that Cake was entitled to one-half the fund after deducting costs; that Campbells were entitled to the amount of their execution from the other half, and that the balance should be paid to Vandike.

Cake excepted to the auditor's report, alleging that the whole fund should have been awarded to him.   Vandike also excepted to the report, claiming that the balance of the fund in court after paying Campbells' judgment should have been awarded to him.

The court (Jordan, P. J.) set aside the report and decreed the whole fund to Cake, saying :—

" Snyder might have applied the partnership property levied upon and sold to the payment of a partnership liability, and if he could do this, a judgment against him for a partnership debt, and levy and sale of partnership propery by the sheriff, would give it the same direction.   Bergstresser, the copartner, makes no objection, and if the judgment had been confessed against him he might waive any objection to the judgment which, although void as to him, would not entitle a subsequent execution-creditor of the firm, who had obtained judgment against both, to come in and claim the money."

From this decree Campbells and Vandike appealed, and assigned for error, that the court erred,

In not confirming the report of the auditor as to Campbells' execution.

In not awarding to Vandike the money in court after paying Campbells' execution.

In not deciding that Cake's execution against Snyder, No. 34 to January Term 1866, was satisfied in point of law; and in awarding any of the fund to Cake.

S. B. Boyer, for appellants, cited Bond v. Aitkin, 6 W. & S. 165; Graeff v. Hitchman, 5 Watts 454; Anderson v. Levan, 1

[Vandike's Appeal.]

W. & S. 334; Hendrickson's Appeal, 12 Harris 363; Cowden's Estate, 1 Barr 267; Story's Eq. § 633; Lloyd v. Galbraith, 8 Casey 103; Abbott's Appeal, 14 Wright 234; Erwin's Appeal, 3 Id. 535.

*W. M. Rockafeller*, for appellee, cited Walker v. Eyth, 1 Casey 217; Singizer's Appeal, 4 Id. 524; Yearsley's Estate, 1 Am. Law Reg. 636; Coover's Appeal, 5 Casey 9; Backus v. Murphy, 3 Wright 397; Hale v. Henrie, 2 Watts 143; McDermott v. Laurence, 7 S. & R. 441.

The opinion of the court was delivered, February 6th 1868, by AGNEW, J.—The property sold under the executions of Cake against Snyder, and of the Campbells and Vandyke against Billman & Bergstresser, was the property of the firm of Snyder & Bergstresser. The executions being against the partners individually, the proceeds of the sale represent the several interests of each, and not that of the partnership, and must be appropriated accordingly. Doner v. Stauffer, 1 Penna. Rep. 198, and a long line of cases following it, establish this to be the law. A few are cited, from which a reference may be obtained to others: Deal v. Bogue, 8 Harris 228; Baker's Appeal, 9 Id. 76; Cooper's Appeal, 2 Casey 262; Backus & Co. v. Murphy & Co., 3 Wright 397. The effect will be to give one-half of the proceeds of the sales to the execution of Cake, and the other half to those of Campbells and Vandike in their order. Cake's judgment against Snyder was taken as a further security for a partnership debt, secured by a mortgage to Cake of $5000, executed by Snyder & Bergstresser, and it is thought this ought to vest in Cake the whole proceeds of the sale of the partnership property. Had Snyder intended to bind the partnership by executing the instrument in the name of the firm, or by confessing the judgment against his partner as well as himself, though without actual authority, the effect attributed by the court below to the sale under Cake's execution would have been to carry the partnership title in the goods over to the purchaser, and the proceeds would then have represented the partnership interest, according to Grier v. Hood, 1 Casey 430, and Kelly's Appeal, 4 Harris 59. But the judgment was in Snyder's name alone, without the trace of an intention in the paper signed by him to bind the firm by it, while the proof is clear that it was expressly given as collateral to the mortgage of Snyder & Bergstresser, in order to secure Cake upon Snyder's individual estate. The form of the security coincided with the actual intent. The execution and levy were therefore upon Snyder's individual interest in the goods, and the fund in court follows the interest sold. Had the partnership title in the goods been sold under some of the executions, the fund being in court, subject to distribution

[Vandike's Appeal.]

"according to law and equity," a very plausible argument would have arisen in favor of Cake, on the ground that the claim secured by his judgment was a partnership debt. But the individual interest of each partner only being sold, the fund must follow the title.

Vandike and Campbells dispute Cake's right to any of the money on the ground that the mortgage of $5000 was satisfied by a prior sale of real estate, which in effect extinguished the judgment given by Snyder as collateral security. But when Cake took the mortgage of $4000 against Snyder prior to the $5000 mortgage against Snyder & Bergstresser he had no notice, so far as it appears from the auditor's report, that the real estate upon which the mortgage was given had been taken into the partnership. The deed, as we understand the case, to Snyder and Bergstresser was an ordinary conveyance vesting title in them as tenants in common, or, at most, as joint tenants, subject to the provisions of the Act of 1812 relating to joint tenancy. Snyder's mortgage therefore bound the undivided half of the title and was entitled to one-half of the proceeds of the sheriff's sales under the mortgages. This left, therefore, a sum unpaid on the $5000 mortgage greater than the sum raised out of the sales of the personalty, and consequently so much of the Snyder judgment continued unsatisfied. Upon the whole case the distribution ordered by the court must be reversed, and distribution decreed to be made as reported by the auditor giving one-half of the net proceeds of the sales under the executions to the execution of Cake and the other half to the executions of Campbells and Vandike in their order, and the costs are ordered to be paid by the appellee.